UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AMARAL MONTROND, | * |
| Plaintiff, | * |
| v. | * |
| LUIS SPENCER, MICHAEL THOMPSON, DALE BISSONETTE, PAUL LETENDRE, JONATHAN HEALEY, FREDERICK LOUGHRAN, JONATHAN MACAL, KYLE FITZPATRICK, RICHARD HOUSBROUK, MICHAEL DONAHUE, JEREMY BRESSLER, MICHAEL RICKETTS, MICHELA PAONE-STUART, CHARLES HESLIN, JAMES BAIROS, BRIAN BIBEAU, SHAWN LOUGHRAN, MARK WAITKEVICH, THOMAS MERLINO, NICHOLAS BULL, MICHAEL CHAPLAIN, BRANDON WALBURN, JOSHUA RYAN, DENNY SANTOS, DEREK GIASANTI, JOSE CID, BRIAN GONZALEZ, EDWARD MORRIS, CARRIE EARLE, KRISTI SALVATELLI, ALLISON TARDY, ALLISON LNU, and JANE DOE, | * Civil Action No. 17-10505-ADB |
| Defendants. | * |

## MEMORANDUM AND ORDER

BURROUGHS, D.J.                                                                                October 29, 2021

**I.      INTRODUCTION**

Plaintiff Amaral Montrond ("Montrond") initiated this action seeking monetary damages from Defendants, current and former employees of the Massachusetts Department of Corrections ("DOC"), in connection with his allegations of physical assault and inadequate medical care during his incarceration in the Massachusetts Correctional Institution at Concord ("MCI-Concord"). [ECF No. 125 ¶ 2]. For the reasons stated below, Defendant Luis Spencer's

("Spencer") and Defendant Michael Thompson's ("Thompson," and together, for purposes of this Order, "the Defendants") Motion to Dismiss Plaintiff's Second Amended Complaint [ECF No. 204] is granted in part and denied in part.

## II. BACKGROUND

### A. Procedural History

Montrond's Second Amended Complaint [ECF No. 125 ("SAC")], docketed on February 5, 2019, brings nine counts including seven which allege civil rights violations under 42 U.S.C. § 1983 and under the Massachusetts Declaration of Rights (Counts I, II, III, IV, V, VI and VII), one for Assault and Battery (Count VIII), and one for the Intentional Infliction of Emotional Distress (Count IX).

On March 24, 2021, Spencer and Thompson moved to dismiss the Second Amended Complaint [ECF No. 204 ("the Motion")] and filed an accompanying memorandum in support [ECF No. 205 ("Mem.")] and affidavit [ECF No. 205-1].[1]  On July 26, 2021, Montrond filed an opposition [ECF No. 220] accompanied by a memorandum in opposition to the Motion [ECF No. 220-1 ("Opp.")].   The parties did not request a hearing on the motion, and the court determines none is necessary.

### B. Facts Alleged in The Second Amended Complaint

The factual allegations in the Second Amended Complaint are taken as true for purposes of this Motion.  *See Gilbert v. City of Chicopee*, 915 F.3d 74, 80 (1st Cir. 2019) (stating that on a motion to dismiss, all well-pled facts in the complaint are assumed to be true).   The Court

---

[1] The Court neither considers the affidavit, nor converts the motion to dismiss into a motion for summary judgment.

presumes familiarity with the facts of this case and incorporates by reference the facts as stated in its February 4, 2021 Memorandum and Order [ECF No. 168].

In addition to those facts, with respect to Spencer and Thompson, Montrond alleges that at all relevant times, Spencer was the Commissioner of the DOC and Thompson was the Superintendent at MCI – Concord. SAC ¶¶ 5-6.  As to certain incidents identified in the Second Amended Complaint, Montrond alleges, in sum, that Spencer and Thompsons in their respective roles as supervisors:

> …failed to supervise, train, and discipline correctional staff in matters of excessive force and in the conduct of their duties to provide care and custody to inmates.,

SAC Count I, ¶ 135, Count III, ¶ 144, and also

> …failed to supervise, train, and discipline [certain defendants] in matters of excessive force, of identification and custodial care of inmates with mental illness, of training in responding to mental health crises, and professional and humane treatment of inmates with mental illness. . .

SAC, Count IV ¶ 148. The SAC further asserts that these supervisory failures "permitted an existence of . . . unspoken polic[ies] or custom[s]": (1) of "not protecting inmates from excessive force;" and, (2) "against taking proper remedial actions against defendants that use excessive force on inmates…" SAC, ¶¶ 135, 144 and 148.

With regards to assaults and perhaps medical care, the SAC alleges that Spencer and Thompson:

> failed to protect plaintiff from harm after being on notice through plaintiff's filed grievances and methods of complaints stating and informing them plaintiff was being assaulted and abused by correctional staff, and that he was in fear being assaulted again to which fact plaintiff was substantially harm[ed] on July 15, 2014, August 5, 2014, and August·11, 2014 occurring after plaintiff's grievance to Thompson, complaints to Thompson . . . as [he] made weekly rounds in SMU, and after the March 13, 2014 incident.

SAC, Count VII, ¶ 156. Finally, Montrond includes Thompson and Spencer in a count for intentional infliction of emotional distress. SAC, Count IX, ¶ 163.

## II. DISCUSSION

### A. Legal Standard

In reviewing a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded facts, analyze those facts in the light most favorable to the plaintiff, and draw all reasonable factual inferences in favor of the plaintiff. *See Gilbert v. City of Chicopee*, 915 F.3d 74, 80 (1st Cir. 2019). Detailed factual allegations are not required, but the complaint must set forth "more than labels and conclusions," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and must contain "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory," *Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir. 2008) (internal quotations omitted). The alleged facts must be sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. With the above standard in mind, "[a] document filed pro se is to be liberally construed, . . . and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations and quotations omitted).

### B. Supervisory 42 U.S.C § 1983 Claims

Montrond claims supervisory liability under 42 U.S.C. §1983. "[A] supervisor may not be held liable under section 1983 on the tort theory of *respondeat superior*, nor can a supervisor's section 1983 liability rest solely on his position of authority." *Guadalupe-Báez v. Pesquera*, 819 F.3d 509, 515 (1st Cir. 2016). Rather, a claim for supervisory liability under Section 1983 "has two elements: first, the plaintiff must show that one of the supervisor's subordinates

abridged the plaintiff's constitutional rights . . . [and] . . . [s]econd, the plaintiff must show that the supervisor's action or inaction was affirmatively linked to that behavior in the sense that it could be characterized as supervisory encouragement, condonation, or acquiescence or gross negligence amounting to deliberate indifference." *Id.* (quotations and alterations omitted). "A plaintiff must allege a strong causal connection, or an affirmative link between the behavior of a subordinate and the action or inaction of his supervisor ... such that the supervisor's conduct led inexorably to the constitutional violation." *Penate v. Hanchett*, 944 F.3d 358, 367 (1st Cir. 2019) (citation and quotations omitted). More specifically, "[a] supervisor may be liable for the foreseeable consequences of a subordinate's conduct if the supervisor would have known of it but for his deliberate indifference or willful blindness. . . . To establish deliberate indifference, a plaintiff must show (1) grave risk of harm, (2) the defendant's actual or constructive knowledge of that risk, and (3) his failure to take easily available measures to address the risk." *Id.* At bottom, "the test for liability draws on the long-established principle that <u>notice</u> is a salient consideration in determining the existence of supervisory liability." *Id.* (citations and quotations omitted) (emphasis original).

    The Defendants argue that, even presuming for present purposes that the conduct of other defendants amounted to constitutional violations, Montrond only pleads "without factual specificity that defendants Spencer and Thompson 'failed to supervise, train and discipline' the other defendants for their alleged excessive force on" Montrond, and further, that he does "not plead any fact that could show any actions by . . . Spencer and Thompson were 'affirmatively linked' to the allegedly constitutional actions of the other defendants by encouraging them to take the alleged actions, condoned or acquiesced in the actions, or was grossly negligent to the point of deliberate indifference to the assumed constitutional violations of the other defendants."

Mem. at 7. The Court disagrees. While thinly pleaded, notice pleading is all that is required at this stage, and there are sufficient, albeit broad, allegations that the Defendants were aware of the actions of their subordinates and did nothing in response. *See* SAC ¶¶ 135, 144, 148 and 156. Furthermore, there are allegations of an unspoken policy or custom of mistreatment of inmates. *Id.* Taking all inferences in favor of Montrond, as this Court must, the linkage is sufficiently pleaded.

The Defendants, citing *Snell v. DeMello*, 44 F. Supp. 2d 386, 392 n.2 (D. Mass. 1999), *Maldonado-Denis v. Castillo-Rodriguez*, 23 F.3d 576 (1st Cir. 1994), and *City of Canton v. Harris*, 489 U.S. 378 (1989), argue that the complaint must be dismissed because the training policies were not identified, nor is it specified how they were deficient. Mem. at 8. A review of the cited cases reveals that none of them relate to the sufficiency of a pleading at the motion to dismiss stage as *Snell* and *Maldonado-Denis* were appeals of summary judgment decisions and *Harris* was an appeal after jury trial. Defendants' argument and reliance on these cases is unpersuasive.

Finally, Defendants argue, without citation to any authority, that the timing of Spencer's employment precludes claims after July 25, 2014. This is a summary judgment argument as Spencer's dates of employment are supported by an affidavit. The Court declines to convert the motion to dismiss into a motion for summary judgment. Moreover, even if the Court were to consider the date as established, it is possible that a policy or practice could have been implemented that continued after Spencer was no longer employed with DOC. Whether or not his departure constitutes a break in the chain of causation cannot be properly determined at the pleading stage.

Accepting the factual allegations as true for purposes of the Motion, and taking all reasonable inferences in favor of Montrond, the Defendants' motion to dismiss the Section 1983 claims is DENIED.

### C. Claims For Negligence

Defendants correctly argue that Spencer and Thompson cannot be liable for common law negligence under the Massachusetts Tort Claims Act to the extent that they were acting in the course of their duties. *See* Mass. Gen. Laws. ch. 258, §2. Montrond does not oppose the motion on this ground. Any claims for common law negligence against the Defendants are therefore DISMISSED.

### D. Standing to Challenge DOC Policies

The DOC Defendants argue that Montrond has no standing to challenge DOC policies. It is well-settled that "regulatory violations cannot state a claim for monetary damages unless there is a private right of action and that monetary remedies are not inferred from regulations." *Hudson v. MacEachern*, 94 F. Supp. 3d 59, 71 (D. Mass. 2015) (citing *See Loffredo v. Ctr. for Addictive Behaviors,* 426 Mass. 541)).  While the underlying conduct may violate both the Eighth Amendment and DOC policies and regulations, it is true that Montrond cannot state a cause of action based upon the violations of DOC regulations alone.  Indeed, "[a] mere violation of internal regulations simply does not always result in a constitutional violation."  *Felton v. Lincoln*, 429 F. Supp. 2d 226, 240 (D. Mass. 2006) (citing *King v. Higgins*, 702 F.2d 18, 20–21 (1st Cir.1983)).  For example, Montrond has brought failure to train claims, which are based upon policies relating to excessive force and mentally ill inmates. While the violation of the policy is not a basis for liability, a violation of DOC policies could be evidence of a failure to

train. Accordingly, all claims as to the Defendants are DISMISSED to the extent that recovery is premised solely on violation of the cited policies and regulations themselves.

### E. Intentional Infliction of Emotional Distress

Under Massachusetts law, to assert a claim for intentional infliction of emotional distress ("IIED"), Montrond must allege: "(1) that [the defendants] intended, knew, or should have known that his conduct would cause emotional distress; (2) that the conduct was extreme and outrageous; (3) that the conduct caused emotional distress; and (4) that the emotional distress was severe." *Galvin v. U.S. Bank, N.A.*, 852 F.3d 146, 161 (1st Cir. 2017) (quoting *Polay v. McMahon*, 468 Mass. 379, 385 (2014)). "The standard for making a claim of [IIED] is very high." *Id.* (citations and quotations omitted). "There is no liability even if the defendant acted with an intent which is tortious or even criminal, with malice, or with a degree of aggravation which would entitle the plaintiff to punitive damages for another tort," and "[n]ot even an intent to inflict emotional distress is sufficient." *Id.* (citation, quotations and punctuation omitted). "Conduct qualifies as extreme and outrageous only if it goes beyond all possible bounds of decency, and is regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (citation, quotations and punctuation omitted). "A judge may grant a motion to dismiss where the conduct alleged in the complaint does not rise to this level." *Id.* (citation, quotations and punctuation omitted).

The Defendants claim that Montrond has failed to allege extreme and outrageous conduct by the Defendants, Mem. at 14, but this cannot be resolved at the pleading stage. While perhaps imperfectly pleaded, the Second Amended Complaint, read generously and with all reasonable inferences in favor of Montrond, supports a claim of intentional infliction of emotional distress against the Defendants to the extent that the failure to train and supervise was motivated by an

alleged unspoken policy.   Although discovery and summary judgment may yield a different analysis, and perhaps a different result, Montrond's claim for intentional infliction of emotional distress against the Defendants may proceed.

### F. Section 1983 Official Capacity Claims

The Defendants argue that, even though the Second Amended Complaint specifically sues them in their individual capacities, any official capacity monetary damages claims against the DOC Defendants are barred because they are not "persons" covered by Section 1983.   Mem. at 15; *see Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1991).   Montrond does not oppose the Defendants' motion to dismiss on this ground, and as the Court previously ordered, a review of the Second Amended Complaint shows that the defendants are being sued only for monetary damages in their individual capacities.   *See* February 4, 2020 Mem. & Order, 31 [ECF No. 168]; SAC ¶ 42 ("Defendants are being sued in their individual capacities.") and Prayer for Relief.   As there are no official capacity 42 U.S.C. §1983 monetary claims alleged, the Defendants' request to dismiss any such claims, are once again, DENIED as MOOT.

### G. Qualified Immunity

"The Supreme Court has long established that, when sued in their individual capacities, government officials are immune from damages claims unless '(1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'"   *Eves v. LePage*, 927 F.3d 575, 582-83 (1st Cir. 2019) (quoting *District of Columbia v. Wesby*, 138 S. Ct. 577, 589, 199 L.Ed.2d 453 (2018).   While qualified immunity can be raised in a motion to dismiss, *id.* at 582 n.5, the Defendants present no legal analysis supporting their argument that they are entitled to qualified immunity at this stage of the proceedings.   *See* Mem. at 15 (stating that "[t]his case is precisely the type which demands that

9

the defendants Spencer and Thompson be given qualified immunity because the plaintiff has not made sufficient allegations of constitutional and civil rights violations by the defendants"). The Defendants' counsel were made aware of this deficiency by the Court's prior memorandum and order. *See* February 4, 2020 Mem. & Order, 31-32. Invoking qualified immunity does not mean that a defendant can broadly claim immunity without developed argument. *See Latimore v. Trotman*, CV 14-13378-MBB, 2017 WL 3623159, at *10 (D. Mass. Aug. 23, 2017) (denying the Commonwealth's motion to dismiss for lack of sufficiency in briefing qualified immunity at summary judgment stage); *see Diaz-Colon v. Fuentes-Agostini*, 786 F.3d 144, 149 (1st Cir. 2015) (affirming denial of summary judgment on qualified immunity for failure to adequately brief and holding: "We share the district court's frustration with the inadequate briefing submitted on behalf of the defendants. It is black letter law that we deem waived claims not made or claims adverted to in a cursory fashion, unaccompanied by developed argument.") (citation and quotation omitted). The Defendants may raise this defense in a summary judgment motion if warranted.

## IV.   CONCLUSION AND ORDER

Based on the foregoing, it is hereby Ordered that the Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint [ECF No. 204] is ALLOWED in part only to the extent it alleges common law negligence claims under Massachusetts law, and additionally to the extent Montrond seeks monetary damages solely based upon the violation of Massachusetts regulations. As to all other claims the Defendants' Motion to Dismiss is hereby DENIED.

**SO ORDERED.**

/s/ Allison D. Burroughs
ALLISON D. BURROUGHS
U.S. DISTRICT JUDGE